Ronald **MAURER**, Plaintiff,

v.

R. **PATTERSON**, Defendant.

No. 96Civ.3273(RMB)(HBP).

United States District Court,
S.D. New York.

Feb. 4, 2000.

David R. Marriott, Cravath, Swaine & Moore, New York City, for plaintiff.

Nancy Lynn Eisenstein, Asst. Atty. General, Attorney General's Office, NYS, New York City, for defendant.

### ORDER

BERMAN, District Judge.

On May 9, 1999, Defendant, Robert Patterson, moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P." or "Rules") 50(b), for a new trial pursuant to Rule 59(a), or for remittitur pursuant to Rule 59(e) [document numbers 59–1, 59–2, 59–3]. **For the reasons set forth below, Defendant's motion is granted in part and denied in part.**

### Background

This action arose under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. At all relevant times, Plaintiff, Ronald Maurer, was and is incarcerated by the New York State Department of Correctional Services ("DOCS") and Defendant was an employee of DOCS at the Sing Sing Correctional Facility.

Plaintiff claimed that Defendant retaliated against him in violation of his constitutional rights by, *inter alia,* finding him guilty at a prison disciplinary hearing of attempting to organize a prison demonstration against so-called "double-bunking" and sentencing him to 210 days in the Special Housing Unit ("SHU").[1] Defendant's decision against Plaintiff was later overturned by the Superintendent of Sing Sing.

The essence of Plaintiff's claim was that the Defendant punished him because, among other things, he participated on an inmate grievance resolution committee ("IGRC") and complained about how the IGRC was being run. (*See* Revised Joint Pre–Trial Order at 2). Defendant contended that there was no retaliatory motive involved in his (administrative) decision finding Plaintiff guilty and that the decision was based solely upon the evidence provided to him during the Plaintiff's hearing. (*Id.*).

A jury trial was held by this Court from April 26, 1999 to April 28, 1999.[2] On April 28, 1999 the jury returned a verdict for Plaintiff, awarding him $25,000 in compensatory damages and $75,000 in punitive damages. Judgment was entered on May 3, 1999. Defendant filed the instant motion on May 9, 1999.

### Analysis

**Standard for Judgment as a Matter of Law Pursuant to Rule 50**

■ A district court may grant a Rule 50 motion for judgment as a matter of law " 'only when, viewing the evidence most favorably to the party other than the movant, there can be but one conclusion as to the verdict that reasonable men could have reached.' " *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 59–60 (2d Cir.1993) (citations omitted). The *Weldy* court went on to state that "[t]he nonmovant must be given the benefit of all reasonable inferences, because the trial court 'cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.' " *Id.* at 60. "Only if there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [the moving party]' may the court properly grant the motion." *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 429 (2d Cir.1995), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996). *See also United States v. Real Property Known As 77 East 3rd Street,* 869 F.Supp. 1042, 1056 (S.D.N.Y. 1994).

■ It is clear that "[s]ince grant of one of these [Rule 50] motions deprives the party of a determination of the facts by a jury, they should be cautiously and sparingly granted . . ." *Weldy,* 985 F.2d at 59 (quoting 9

---

1. No such demonstration ever took place.

2. This case was reassigned from United States District Judge Sidney H. Stein to this Court on or about December 23, 1998.

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1971)). *See also Falco v. Stew Leonard's,* 187 F.R.D. 442, 444 (D.Conn.1999) ("[b]ecause a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored").

### Analysis Under Rule 50

■ Defendant falls far short of meeting his high burden under Rule 50. There is no basis for judgment as a matter of law. At the outset, the Court notes that Defendant has misconstrued the scope of Plaintiff's claim. Defendant argues that "noticeably absent from the proof submitted by plaintiff, was any reference whatsoever, of a nexus between plaintiff's protected conduct, *i.e.* his filing grievances against Sgt. Leghorn and defendant Lt. Patterson's finding him guilty of organizing ... the inmate uprising." (Defendant Moving Brief at 10). Defendant here mischaracterizes and incorrectly narrows Plaintiff's claim. Plaintiff's claim concerned not only retaliation for filing grievances against Sgt. Leghorn, but also included retaliation based upon Plaintiff's participation on the IGRC and his complaints about how the committee was being run. (*See* Revised Joint Pre–Trial Order at 2). In failing accurately to describe Plaintiff's claim in full, Defendant leaves unchallenged several independent bases for the jury's verdict which include retaliation based on Plaintiff's participation on the IGRC and Plaintiff's complaints about how the IGRC was being run.

In any event, it cannot be said that there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise or conjecture. **Nor** is there such an overwhelming amount of evidence in favor of the Defendant that reasonable and fair minded jurors could not arrive at a verdict against him. *See, e.g., LeBlanc–Sternberg,* 67 F.3d at 429.

As the Court instructed the jury on April 28, 1999, **without objection from either party,** in order to establish his claim, Plaintiff was required to prove, among other things, that his protected conduct[3] was "a substantial factor or was a motivating factor in the defendant's decision to discipline him." (Trial Transcript ("Tr.") at 386).[4] At trial, Plaintiff presented evidence from which the jury could reasonably infer the requisite unlawful motive on Defendant's part; *i.e.,* that Plaintiff was unjustifiably singled out for punishment due to his IGRC status and in order to send a message to other inmates not to demonstrate. *See Weldy,* 985 F.2d at 59 ("[t]he nonmovant must be given the benefit of all reasonable inferences, because the trial court 'cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury' ").

Defendant conceded at trial that there were a number of inmates, perhaps up to thirty (30), who were identified as being involved in organizing the alleged demonstration. (Tr. at 242). Despite this, only Plaintiff and one other inmate (i.e. Terry Fox), both of whom were members of the IGRC, were punished. (Tr. at 243). Defendant presided over the disciplinary hearings of both Plaintiff and Mr. Fox, he knew that both were members of the IGRC, he found both guilty, and he sentenced both to 210 days in the SHU. As noted, Defendant's decision was subsequently overturned by the Superintendent of Sing Sing. (Tr. at 240).

Plaintiff also adduced testimony at trial that the overwhelming evidence presented at Plaintiff's prison disciplinary hearing before Defendant showed that he did not organize the alleged demonstration. (Tr. at 90–116). At trial, Defendant testified as follows:

Q: No one told you they saw or heard Mr. Maurer organize a demonstration, correct?

A: That's true.

---

**3.** "[Plaintiff] has a protected First Amendment right to engage in his duties as IGRC representative without fear of reprisal or retaliation." *Alnutt v. Cleary,* 913 F.Supp. 160, 169 (W.D.N.Y. 1996).

**4.** In the instant moving papers, Defendant mistakenly uses the phrase "sole motivating factor" rather than "a motivating factor" in describing Plaintiff's burden of proof at trial. (Defendant's Reply Brief at 4).

Q: And no witness told you that they saw Mr. Maurer urge a demonstration, right?

A: That's true.

Q: Or plan a demonstration?

A: That's true.

Q: Or in any way participate in a demonstration?

A: That's right.

(Tr. at 232–33). Despite this, Defendant testified at trial that he found Plaintiff guilty based upon "secondhand information from a confidential source." (Tr. at 230). At the same time, Defendant conceded that he "heard testimony that he [the confidential source] was not credible." (Tr. at 231). Defendant's decision was subsequently reversed by the Superintendent of Sing Sing. (Tr. at 240). Based on this and other evidence presented at trial, a reasonable, fair minded jury could certainly have returned a verdict for Plaintiff as this jury did.

Defendant's assertion that "[t]here was an abundance of testimony and documentary evidence admitted at trial (over objection) concerning the contents of plaintiff's misbehavior report and the conduct of plaintiff's hearing conducted by Lt. Patterson" is specious. (Defendant's Moving Br. at 10). The misbehavior report (Exhibit 7) and the transcript of the disciplinary hearing (Exhibit 25), were admitted into evidence at the **joint** request of the parties. (Tr. at 40) ("THE COURT: First of all, [the parties] have agreed to the admissibility of certain exhibits, Nos. 1 through 28 in this case, and I will take this opportunity to admit those exhibits into evidence in this trial").

**Standard for Motion for a New Trial Pursuant to Rule 59**

■ "While a new trial may be granted if there was substantial judicial error in the admission or exclusion of evidence … the court may not grant a new trial unless it is convinced that 'the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Falco*, 187 F.R.D. at 444–45 (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)). *See also Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978) (trial court should "'abstain from interfering with the verdict

unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice'") (citation omitted). The Court of Appeals has cautioned that "[a] court considering a Rule 59 motion for a new trial must bear in mind … that the court should only grant such a motion when the jury's verdict is 'egregious.'" *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998) (citation omitted). Therefore, the burden on the moving party is "substantial." *Falco*, 187 F.R.D. at 445.

■ Moreover, it is clear that "a court should rarely disturb a jury's evaluation of a witness's credibility." *DLC Management Corp.*, 163 F.3d at 134. *See also Waul v. Coughlin*, 177 F.R.D. 173, 176 (S.D.N.Y. 1997), *reconsideration denied*, 1998 WL 295481 (S.D.N.Y. June 4, 1998) ("'[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial'") (citation omitted).

**Analysis Under Rule 59**

The Court recognizes that it should "'abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.'" *Bevevino*, 574 F.2d at 684 (citation omitted). Here, based upon the credible evidence presented at trial in support of Plaintiff's claim, the jury could (and did) reasonably conclude that Plaintiff's engaging in protected conduct (e.g., voicing his concerns as a member of the IGRC) was a substantial and/or motivating factor in Defendant's decision to take disciplinary measures against Plaintiff. The jury could (and did) reasonably conclude that the Defendant would not have taken the same disciplinary measures against Plaintiff if Plaintiff had not engaged in protected conduct.

■ **In the Court's view, the instant case turned largely upon the credibility of Plaintiff and Defendant.** "Where resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the

verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). *See also DLC Management Corp.*, 163 F.3d at 134, *Waul*, 177 F.R.D. at 176. Here, it was certainly permissible for the jury to discredit some or all of Defendant's testimony, while crediting some or all of Plaintiff's testimony. For instance, Defendant testified at one point that it was not "unusual" that his determination of Plaintiff's guilt at the disciplinary hearing was subsequently reversed by the Superintendent of Sing Sing. However, Defendant later conceded that, after conducting "[t]housands" of disciplinary hearings over a nineteen (19) year period, he had been reversed "[m]aybe three" times. (Tr. at 240). In addition, the instant case was of short duration involving simple, straightforward subject matter. Courts have observed that "[w]here a trial is long and complicated and deals with a subject matter not lying within the ordinary knowledge of jurors a verdict should be scrutinized more closely by the trial judge than is necessary where the litigation deals with material which is familiar and simple ..." *Lind v. Schenley Industries Inc.*, 278 F.2d 79, 90–91 (3d. Cir.1960), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

Based on the testimony presented at trial, the Court cannot conclude that the jury's verdict was seriously erroneous or a miscarriage of justice. *See Streger v. Lenox Hill Hospital*, 1999 WL 459820 at *2 (S.D.N.Y. 1999). *See also Bevevino*, 574 F.2d at 684.

### Remittitur—Compensatory Damages

 "It is well settled that calculation of damages is the province of the jury." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). In fact, in his brief, Defendant concedes that "it is generally rare for a court to scrutinize a jury's award of compensatory damages ..." (Defendant's Moving Brief at 17). When reviewing a jury's award of both compensatory and punitive damages, the inquiry focuses on " 'whether the award is so high as to shock the judicial conscience and constitute a denial of justice.' " *Ismail v. Cohen*, 899 F.2d at 186 (citation omitted).

 In the instant case, Defendant improperly found Plaintiff guilty of organizing a prison demonstration and sentenced him to 210 days in the SHU. Plaintiff spent approximately 30 days in the SHU before the finding of guilt and Plaintiff's sentence were reversed by the Superintendent of Sing Sing. (Tr. 125–26, 240). Additionally, because of the Defendant's finding of guilt, Plaintiff was removed from the IGRC. (Tr. at 202, 239). And, despite the fact that Defendant's finding of guilt was later reversed by the Superintendent of Sing Sing, the finding may still have a "detrimental" effect on Plaintiff's prospects for parole. (Tr. at 130).

In assessing the reasonableness of the award here, the Court need not limit its frame of reference to Federal § 1983 cases. *See Ismail*, 899 F.2d at 186. In *Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y.1984), a case analogous to the matter at bar, the Court awarded plaintiff $50,000 in compensatory damages following a bench trial. *Id.* at 1082. In *Alnutt v. Cleary*, 27 F.Supp.2d 395 (W.D.N.Y.1998), a jury awarded $35,000 to a prisoner in compensatory damages for retaliation based upon his work on the IGRC. *Id.* at 398.

Thus, in the instant case, the jury's award of $25,000 in compensatory damages does not " 'shock the judicial conscience and constitute a denial of justice.' " *Ismail*, 899 F.2d at 186 (citation omitted).

### Remittitur—Punitive Damages

 Whether a punitive damage award "shocks the judicial conscience" so as to permit remittitur depends on "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.1996) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). The United States Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally pro-

tected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The Second Circuit has cautioned that "[i]n gauging excessiveness, we must keep in mind the purpose of punitive damages: 'to punish the defendant and to deter him and others from similar conduct in the future' . . . [t]hus our task is 'to make certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.'" *Lee* 101 F.3d at 809 (citations omitted).

 In the instant case, the Court is convinced that while Defendant's actions were unlawful, they do not rise very high on the scale of reprehensibility. Defendant found Plaintiff guilty at a disciplinary hearing of organizing a prison demonstration not, in the Court's view, necessarily out of evil motive or malice, but, at least in part, out of his effort and concern (even if misguided) for maintaining discipline and order in the prison. This conclusion is based upon Defendant's testimony at trial and his demeanor as observed by the Court. For example, Defendant testified that "we are taught at the end of a hearing that if you do find an inmate guilty of violating any rules, it doesn't have to be double bunk. The inmate could be found guilty of refusing a direct order. Part of the disposition is to tell the inmate that the facility cannot tolerate you refusing a direct order and this message is given to you as well as the other inmates." (Tr. at 209). Defendant appeared to the Court (by testimony and demeanor) concerned over the security of the prison. While this does not excuse Defendant's conduct, it does in the Court's view, weigh against a large punitive damage award. Also, it appears that punitive damage awards in several other similar cases have been smaller. *See, e.g., Morrison*, 592 F.Supp. at 1082 (after a bench trial, Judge awarded $50,000 in compensatory damages and $5000 in punitive damages from each of three defendants). Here, the Court holds that, in view of Defendant's concern for prison order, the upper limit of punitive damages that would not shock the judicial conscience is $20,000. The Court believes that this amount adequately reflects the seriousness of Defendant's conduct and is sufficient to punish and deter him and others from engaging in similar conduct in the future.

### Conclusion

For the foregoing reasons, Defendant's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or for a new trial pursuant to Fed.R.Civ.P. 59(a) is denied. Defendant's motion for a new trial on damages pursuant to Fed.R.Civ.P. 59(e) is denied upon the condition that Plaintiff accept remittitur reducing the punitive damages award to $20,000. In the event that Plaintiff accepts the remittitur, his counsel shall submit a judgment, on notice to counsel for Defendant, within twenty (20) days of the date of this Order. After the Final Judgment has been entered, the Court will rule on Plaintiff's counsel's motion for attorneys' fees and costs.

At the Court conference to be held on February 8, 2000, the parties should be prepared to discuss future scheduling of this matter.