**Roysworth D. GRANT, Willie E. Ellis, on behalf of themselves, and all others similarly situated, Plaintiffs–Appellees,**

v.

**Louis MARTINEZ, Plaintiff–Intervenor,**

v.

**BETHLEHEM STEEL CORPORATION, James Deaver, Thomas R. Connelly, Richard Driggers, Defendants–Appellants.**

No. 1645, Docket 92–7255.

United States Court of Appeals, Second Circuit.

Argued June 2, 1992.

Decided Aug. 18, 1992.

Wayne A. Cross, New York City (Janet E. Mattick, Reboul, MacMurray, Hewitt, Maynard & Kristol, of counsel), for defendants-appellants.

Leon Friedman, New York City (Richard A. Levy, Eisner, Levy, Pollack & Ratner, Lewis M. Steel, Steel & Bellman, of counsel), for plaintiffs-appellees and plaintiff-intervenor.

Before: OAKES, Chief Judge,* NEWMAN and McLAUGHLIN, Circuit Judges.

OAKES, Chief Judge:

This appeal requires us to revisit the controversy surrounding the hiring practices of Bethlehem Steel Corporation's Fabricating Steel Construction Division. Before us is an appeal from a judgment of the United States District Court for the Southern District of New York, Whitman Knapp, Judge, awarding appellees $512,590.02 in attorneys' fees and costs pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(k) (1988) and 42 U.S.C. § 1988 (1988). Appellants Bethlehem and three of its supervisory employees (hereinafter "Bethlehem") contend that the district court erred in calculating the lodestar and in failing to adjust the lodestar downward due to appellees' limited success. We disagree; therefore, we affirm the judgment of the district court.

I

The background of this appeal is set forth in detail in *Grant v. Bethlehem Steel Corp. ("Grant I")*, 635 F.2d 1007 (2d Cir. 1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981) and in *Grant v. Bethlehem Steel Corp. ("Grant II")*, 823 F.2d 20 (2d Cir.1987)—familiarity with which is assumed. We present, therefore, only the facts particularly relevant to the issues before us on appeal.

Appellees filed this class action in 1976 alleging that Bethlehem, in selecting foremen for their structural steel operations, had discriminated against Hispanic and African–American workers in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e–17 (1988) and 42 U.S.C. § 1981 (1988). The suit, which focused on Bethlehem's word-of-mouth hiring practices, sought injunctive relief as well as damages. Bethlehem offered to settle the suit, pursuant to Federal Rule of Civil Procedure 68, for $40,000 plus attorneys' fees and costs on October 20, 1977. Appellees rejected that offer and moved to strike it on the grounds that discovery was still in progress and both the extent of the damages and the size of the class had yet to be determined; therefore, appellees argue, settlement would have been premature in 1977. The district court denied appellees' motion without prejudice to their right to renew the motion at a later date.

In 1978, following an eight-day bench trial, the district court found that appellees had failed to establish a prima facie case. After trial, Bethlehem sought to invoke Rule 68 to obtain costs. Appellees renewed their motion to strike the offer of judgment and the district court granted the motion.

In *Grant I*, 635 F.2d at 1016–18, we reversed the district court, finding that appellees had established a prima facie case of both discriminatory impact and discriminatory treatment. Although we remanded to allow Bethlehem the opportunity to prove that its conduct resulted from a business necessity, *Grant I* established that subjective hiring criteria, then prevalent in the construction industry, were not immune to judicial scrutiny. On remand, the district court directed Magistrate Judge Bernikow to explore the possibility of settlement with the parties. In 1982, class counsel and Bethlehem agreed to settle for $60,000 plus attorneys' fees and costs. In 1986, the district court approved the settlement over a challenge by the named plaintiffs. Following our affirmance of the district court's order in *Grant II*, 823 F.2d at 24, the case once again was referred to the Magistrate Judge to determine the method of distributing the settlement to the class. On October 24, 1988, the district court ap-

---

* After argument but before decision, Chief Judge Oakes became a Senior Circuit Judge.

proved the recommended method of distribution.

On December 21, 1989, class counsel made an application for fees. After additional discovery by Bethlehem and briefing by the parties, the Magistrate Judge recommended an award of $498,922.34, a $127,920.31 reduction of appellees' initial fee application. The district court adopted the Magistrate Judge's report and recommendation in a judgment dated February 26, 1992.[1] Bethlehem appeals from this judgment.

## II

Both 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k) provide that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Relief, of course, need not be judicially decreed for a party to be eligible for a fee award. See Hewitt v. Helms, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Bethlehem thus does not challenge that appellees fall within the meaning of the term "prevailing party," even though the dispute was resolved through settlement. Instead, Bethlehem contends that (1) the district court erred in assessing the lodestar; (2) the lodestar should have been adjusted downward due to the appellees' limited success; and (3) the fee award was out of proportion to the damages awarded to the appellee. In assessing Bethlehem's arguments, we must bear in mind that the district court has wide discretion in determining the amount of attorneys' fees to award; thus, absent an abuse of discretion or an error of law we will not disturb the district court's assessment of the appropriate fee award. Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057–58 (2d Cir.1989), cert. denied, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); see also Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

### A. Calculation of the Lodestar

Once a district court determines that a party has prevailed, it must calculate what constitutes a reasonable attorney's fee. The lodestar approach governs the initial estimate of reasonable fees. Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals. Bethlehem challenges the district court's assessment of both the number of hours expended by class counsel and the hourly rate used to calculate the lodestar.

 With regard to the hours expended, Bethlehem levels a number of challenges to the district court's assessment of the hours expended by class counsel, two of which merit consideration. First, Bethlehem objects to all billings by class counsel subsequent to the 1977 settlement offer on the grounds that these hours did not contribute sufficiently to the monetary relief ultimately obtained by appellees; therefore, they claim that these hours were unreasonable. Bethlehem's argument, however, succeeds only if we were to engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained. The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir.1990). Applying this analysis we are unable to say that class counsel's post-offer hours were unreasonable. At the time of Bethlehem's offer, appellees lacked the information necessary to evaluate the offer. Furthermore, at that time it was apparent to neither the district court nor to the appellees that only monetary relief was appropriate, even though Bethlehem's Construction Division had ceased operations. For example, the district court, in an order

---

**1.** The final award, which totaled $512,590.02, included an additional $13,676.68, the amount that appellees incurred in defending the Magistrate Judge's report before the district court.

dated January 27, 1977, suggested that some form of injunctive relief—such as training programs for minority steel workers—might still be feasible.

■ Second, Bethlehem argues that the time that class counsel spent defending the 1982 settlement against challenges brought by class members should be excluded from the lodestar calculation. Bethlehem estimates that between June 1981 and June 1987 class counsel expended in excess of 354.9 lawyer hours and 47.7 paralegal hours in attempts to resolve disputes among class members as to the fairness of the 1982 settlement offer.[2] Although the Magistrate Judge and the district court excluded 50 attorney hours from the fee calculation—hours attributable to opposing the named plaintiffs' motion to dismiss class counsel—they approved the hours spent defending the settlement agreement. Federal Rule of Civil Procedure 23(e) provides that proposed settlements of class action suits are subject to court approval and class counsel shouldered the burden of defending the settlement before the Magistrate Judge and the district court. As the Magistrate Judge noted, "The alternative to counsel's effective advocacy would have been further settlement negotiations or trial, either of which would likely have required considerable resources." Given class counsel's role in establishing the fairness of the settlement, which benefited both the class members and Bethlehem, we find that the district court did not abuse its discretion in including in the lodestar calculation the time expended defending the settlement.

Bethlehem brings numerous other challenges to the reasonableness of the hours expended by class counsel. Having considered these arguments, we conclude that the district court did not abuse its discretion in determining the hours for which class counsel may receive compensation.

■ With regard to the hourly rate used to calculate the lodestar, Bethlehem argues that the district court should have used the rates charged when counsel performed the work (the historic rate) instead of the current rate of $225 per hour for the senior class counsel. The practice in this circuit had been to apply the historic rate, or, in the case of protracted litigation, to divide the litigation into two periods, applying the current rate to the recent phase and the historic rate to the earlier phase. *See New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1153 (2d Cir.1983). In *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989), however, the Supreme Court observed that it is within the discretion of the district court to make "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise." *See also Huntington Branch, NAACP v. Town of Huntington*, 961 F.2d 1048, 1049 (2d Cir.1992); *Chambless*, 885 F.2d at 1060. In protracted litigation, therefore, a district court has the latitude to depart from the two-phase approach and may calculate all hours at whatever rate is necessary to compensate counsel for delay. *See Cowan v. Prudential Ins. Co. of America*, 728 F.Supp. 87, 92 (D.Conn.1990), *rev'd on other grounds*, 935 F.2d 522 (2d Cir.1991). In the case at hand, counsel has represented appellees since 1976 without compensation. After *Jenkins*, it was within the district court's discretion to compensate class counsel fully for the delay by taking into account the prevailing time-value of money—whether by applying the judgment interest rate set forth in 28 U.S.C. § 1961 (1988) or the historic prime rate.[3] The method of compensation for delay selected by the district court resulted in less than full compensation for the delay; thus, Bethlehem has failed to establish that the district court abused its discretion by using current rates to calculate the lodestar.

---

**2.** Class counsel, in contrast, claim that many of the post-settlement hours were spent on administrative tasks necessary to the division of the settlement and not on defending the settlement.

**3.** According to class counsel, the judgment interest rate would result, in effect, in an hourly rate of $282.55 for senior counsel and the use of the prime rate would result in an hourly rate of $339.

### B. *Adjustment for Limited Success*

 The determination of the amount of the award does not end with the lodestar calculation. Although there is a " 'strong presumption' that the lodestar figure represents the 'reasonable' fee," *City of Burlington v. Dague*, —— U.S. ——, ——, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992), other considerations may lead to an upward or downward departure from the lodestar. *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. The party advocating such a departure, however, bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee. *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

 Bethlehem argues that the lodestar should have been adjusted downward to reflect appellees' limited success. In *Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1939–41, the Supreme Court set forth an analytic framework for determining whether a plaintiff's partial success requires a reduction in the lodestar. At step one of this analysis, the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation. *Id.* at 434–35, 103 S.Ct. at 1939–40; 2 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation* 276–77 (2d ed. 1991). At step two, the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941; 2 Schwartz & Kirklin, *supra*, at 278. If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

 In the present case, all of appellees' claims were based on a common core of facts, thus there were no unrelated claims to which step one of the *Hensley* analysis might be applied. Bethlehem contends that appellees' success was limited— under the second step of the *Hensley* analysis—because they did not obtain the injunctive relief originally requested and because of the low settlement amount. Thus, we must determine whether either failure to receive all relief requested or litigation that results in a low recovery falls within the meaning of "limited success."

Bethlehem's argument that appellees' achieved limited success because they failed to receive all the relief they requested is unavailing. In *Hensley*, 461 U.S. at 436 n. 11, 103 S.Ct. at 1941, the Court recognized that "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *See also Davis v. Mason County*, 927 F.2d 1473, 1489 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991); *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir.1983). That determination lies largely within the discretion of the district court. Judge Knapp and Magistrate Judge Bernikow commented on counsel's outstanding skill and the settlement resulted in a recovery that Bethlehem admits was "more than [appellees] could ever have recovered had they won all their claims at trial." Bethlehem thus has not established that the district court abused its discretion in finding that the relief received by appellees justified the fee award.

 Bethlehem next argues that the fee award granted by the district court was out of proportion to the damage award. We have previously determined that the lodestar figure may be reduced in situations in which plaintiffs receive only nominal damage awards. *United States Football League*, 887 F.2d at 411–12. But such a reduction would be inappropriate in the case at hand where the parties settled for $60,000—an amount that defies the "nominal" label. Bethlehem argues that the phrase "limited success" encompasses damage awards that are merely small relative

to the lodestar figure; thus, Bethlehem contends, the lodestar figure should be reduced in order to achieve proportionality between the fee award and the plaintiff's recovery. A majority of the Supreme Court, however, has rejected such a per se proportionality *rule*. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (4-1-4 decision). The plurality in *Rivera* rejected a proportionality rule in all circumstances. *Id.* at 574-78, 106 S.Ct. at 2694-96. Justice Powell, who concurred in the judgment on the grounds that the district court's findings of fact were not clearly erroneous, commented that "[n]either the decisions of this Court nor the legislative history of § 1988 support such a 'rule.'" *Id.* at 585, 106 S.Ct. at 2699 (Powell, J., concurring). Bethlehem, in contrast, drawing on aspects of Justice Powell's concurrence, *see Rivera*, 477 U.S. at 586 n. 3, 106 S.Ct. at 2700 n. 3 (Powell, J., concurring), interprets *Rivera* to require that primary consideration be given to proportionality in the calculation of a fee award, except in the rare case in which the public interest is served by the vindication of constitutional rights. We rejected this interpretation of *Rivera* in *Cowan v. Prudential Insurance Co. of America*, 935 F.2d 522 (2d Cir.1991). There we stated that "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Id.* at 526; *see also Davis v. Southeastern Pa. Transp. Auth.*, 924 F.2d 51, 54 (3d Cir.1991); *Jackson v. Crews*, 873 F.2d 1105, 1110 (8th Cir.1989); *Cunningham v. City of McKeesport*, 807 F.2d 49, 52-54 (3rd Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987). Rejecting a proposed dichotomy between private damage and public interest cases, in *Cowan* we reasoned that

> Allowing proportionality reductions when a court determines that no public interest was served by a civil rights suit would discount the social value inherent in correcting all forms of discrimination, public or private. Proportionality is contrary to our national policy of encouraging the eradication of every type of racial discrimination.

*Cowan*, 935 F.2d at 527-28.

Bethlehem argues that *Cowan* steered our jurisprudence off the course set by the Supreme Court and that we should take this opportunity to correct our course. We disagree. Furthermore, even if we were to introduce a proportionality analysis in private damage cases in which the public interest is not vindicated, as Bethlehem contends we should, we would still affirm the judgment of the district court in this case. The monetary settlement in this case does not fully reflect the benefit the public gleaned from the litigation leading up to the settlement: the precedent that this case helped to establish contributed to changes in the hiring practices of the building trades and opened the courts to other meritorious civil rights claims. In so doing, appellees vindicated a policy that Congress considered of the highest importance, *see Rivera*, 477 U.S. at 575, 106 S.Ct. at 2694—a public benefit for which appellees and their counsel may be compensated.

For the reasons set forth above, we affirm the judgment of the district court.