Paula L. **COFFEY**, Plaintiff,

v.

**DOBBS INTERNATIONAL SERVICES, INC. and John Bryson, Defendants.**

No. 96–CV–948.

United States District Court, N.D. New York.

May 5, 1998.

Law Office of Mary Beth Hynes (Mary Beth Hynes, of counsel), Herrmann, Pelagalli & Weiner, LLP (Paul Pelagalli, of counsel), Clifton, NY, for Plaintiff.

Law Offices of Daniel Whalen (Matthew J. Clyne, of counsel), Albany, NY, for Defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Paula L. Coffey brought this action in June of 1996 for hostile work environment and quid pro quo sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York Human Rights Law, Executive Law § 290, *et seq.* Plaintiff also brought common law negligence claims. The Complaint was amended in November of 1997 to include a claim for retaliatory discharge. Defendants are plaintiff's former employer, Dobbs International Services, Inc. ("Dobbs") and her former supervisor, John Bryson.

The case was tried to a jury in Albany, New York in December of 1997. On December 16, 1997, the jury returned a verdict for plaintiff on the retaliation claim, and for defendant on the harassment claims.[1] The jury found plaintiff was entitled to a back pay award and punitive damages against Dobbs on the retaliation claim.

---

1. The Court dismissed the negligence claims prior to submission of the case to the jury.

On December 18, 1997, the Court held a hearing on the issue of punitive damages. The same day, the jury returned a punitive damage award of $75,000 against Dobbs. The parties stipulated to a back pay figure of $4,341.58, and the Clerk entered judgment in plaintiff's favor for $79,341.58 on January 28, 1998.

Defendants now move, pursuant to Fed. R.Civ.P. 50(b), for judgment as a matter of law on the retaliation claim. Plaintiff moves for an award of attorneys' fees and costs.

## I. Background

The Court recounts the facts of this case only to the extent they are relevant to the pending motions. Plaintiff was employed at Dobbs' Albany Flight Kitchen from October of 1991 until her resignation in January of 1995. Her resignation stemmed from allegations of sexual harassment by Bryson, who was then the Albany Flight Kitchen's General Manager.[2] In May of 1997, while this lawsuit was pending, plaintiff accepted an offer of re-employment at the Albany Flight Kitchen. The acting General Manager of the Albany Flight Kitchen at the time plaintiff returned was James Russo, a friend of Bryson's. During the same period, Dobbs was considering the sale of the Albany Flight Kitchen to Russo.

During the summer of 1997, Russo re-hired Bryson to do consulting work in connection with Russo's pending purchase of the Albany Flight Kitchen. Upset at this turn of events, plaintiff told Russo she could not work at Dobbs with Bryson there. Plaintiff thus took an approved vacation until Bryson's consulting work was complete. Upon returning from the vacation near the end of the summer, she gave a deposition in connection with this lawsuit on August 28, 1997. Bryson was present during the deposition, during which plaintiff, in her testimony, made reference to both Bryson and Russo. Plaintiff also presented evidence at trial that Bryson and Russo communicated after the deposition.

On September 1, 1997, plaintiff was discharged. Dobbs sold the Albany Flight Kitchen to Russo on September 3, 1997. In response to this turn of events, plaintiff's attorney contacted Magistrate Judge Ralph W. Smith, Jr. by letter dated October 27, 1997 to request permission to amend the Complaint to include a claim for retaliatory discharge. Judge Smith granted the request in an order signed November 18, 1997.

## II. Discussion

### A. Defendants' Motion for Judgment as a Matter of Law

The Second Circuit has established the standard for granting a judgment as a matter of law. The court in *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163 (2d Cir.1980), stated that:

the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n. o. v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 167–68; *see Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983).[3] Rule 50 of the Federal Rules of Civil Procedure governs the procedure for granting judgment as a matter of law by motion made before the jury retires pursuant to Rule 50(a), or motion after the

---

**2.** After a transfer to Boston in 1994, Bryson left Dobbs' employ in October of 1996.

**3.** While the 1991 amendments to Rule 50 abandoned the terms "directed verdict" and "judgment not withstanding the verdict" in favor of

the encompassing "judgment as a matter of law" terminology, the standard for granting the motions was not altered. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 Amendment.

jury has spoken pursuant to Rule 50(b). Fed.R.Civ.P. 50; *see Samuels,* 992 F.2d at 14.

The Court turns to defendants' arguments with this standard in mind.

## 1. Leave to Amend the Complaint

■ Defendants first argue the magistrate judge erred in allowing plaintiff leave to amend the Complaint to add the claim of retaliatory discharge. As plaintiff correctly notes, the present motion is not the appropriate vehicle for such an argument.

Federal Rule of Civil Procedure 72(a) provides, as to nondispositive orders of a magistrate judge, that

[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; *a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.*

*Id.* (emphasis added). Furthermore, Rule 72.1(b) of the Local Rules for the Northern District of New York provides that any party may appeal a magistrate judge's non-dispositive order within ten days after the order is filed. Defendants filed no such objections in this Court within the ten-day period following the November 18, 1997 order. They accordingly are foreclosed by the explicit language of Fed.R.Civ.P. 72(a) from assigning errors to the magistrate judge's order granting plaintiff leave to amend the Complaint. Their motion for judgment as a matter of law is therefore denied in this respect.

## 2. Dobbs' Liability for Retaliatory Discharge

Defendants next argue that plaintiff failed at trial to prove a prima facie case of retaliatory discharge. Specifically, defendants argue: (1) there was no proof that Dobbs' corporate hierarchy was aware that Russo terminated or declined to retain the plaintiff; (2) Dobbs had no legal control over whether Russo retained plaintiff after the sale; and (3) the retaliation claim was devoid of any evidentiary foundation logically connecting Russo's decision with any retaliatory animus on Dobbs' part.

■ As to the first argument, the parties fail to address the standard to be applied in imputing liability to an employer for a supervisor's retaliatory actions. Courts generally are split on the question. *See, e.g., Cross v. Cleaver,* 142 F.3d 1059, 1073 (8th Cir.1998) (where supervisory employee with power to hire, fire, demote, transfer or suspend employee is shown to have used authority to retaliate, plaintiff need not prove employer participated in or knew or should have known of retaliation); *Davis v. Palmer Dodge West, Inc.,* 977 F.Supp. 917, 925 (S.D.Ind.1997) ("courts must hold an employer to a strict liability standard for quid pro quo harassment, and a heightened negligence standard for hostile environment and retaliatory harassment by a supervisor."); *Gary v. Washington Metro. Area Transit Auth.,* 886 F.Supp. 78, 88 (D.D.C.1995) ("In a retaliation case, as in the quid pro quo case, the employer should be held strictly liable."). Though the Second Circuit has not addressed the issue, this Court finds the Eighth Circuit's rationale in *Cross* persuasive on the present facts, and finds that, as a matter of law, Russo's retaliatory actions were those of his employer.

Russo was the acting General Manager of Dobbs at the time of plaintiff's termination. It is undisputed he had the power to hire and fire employees. The rationale for applying strict liability in the quid pro quo context is thus applicable to the present facts perforce; Russo, like the quid pro quo harasser, necessarily wielded Dobbs' authority in making what the jury found was a retaliatory decision to fire plaintiff. *See Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.), *cert. denied,* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); *see also Kotcher v. Rosa & Sullivan Appliance Center,* Inc., 957 F.2d 59, 62 (2d Cir.1992) ("The supervisor is deemed to act on behalf of the employer when making decisions that affect the economic status of the employee."). By wielding the authority delegated to him by Dobbs, Russo was, "by definition, acting as the employer." *Cross,* 142 F.3d 1059, 1073. Accordingly, the nature of Russo's position and the decisions he made with respect to plain-

tiff's employment warrant imputing liability for those decisions to Dobbs.[4]

Dobbs next argues it had no legal control over whether Russo retained plaintiff as an employee in the new company after the sale. This argument presumes that Russo's retaliation took the form of a refusal to retain plaintiff after the sale, rather than firing plaintiff from her position with Dobbs. The jury, however, heard evidence from which it could conclude that Russo, acting as General Manager of the Albany Flight Kitchen, terminated plaintiff.

█ Lastly, Dobbs argues that Russo's decision was not logically connected with any retaliatory animus on Dobbs' part. The jury's conclusion as to causation was not, however, without evidentiary support. The evidence at trial showed that plaintiff's deposition testimony on August 28, 1997, made reference to both Bryson and Russo, and that the two men met shortly thereafter but before plaintiff's termination. Plaintiff was terminated on September 1, 1997. The causal connection necessary to make out a prima facie case of retaliation " 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.' " *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996) (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)). Thus, there was neither a complete absence of evidence to support the conclusion of a causal connection nor an overwhelming amount of evidence to the contrary. *See Mattivi,* 618 F.2d at 167–68.

For these reasons, defendants' motion for judgment as a matter of law is denied in this respect.

### 3. The Jury Instructions

█ Defendants next argue that the court erred in instructing the jury that it could infer unlawful retaliation if it found that Dobbs failed to offer plaintiff a transfer to another facility. By so doing, defendants argue, the Court directed a verdict in plain-

tiff's favor because no proof was presented that such an offer was made.

Defendants mischaracterize the instruction. The Court charged the jury that Dobbs' refusal to transfer plaintiff after the sale of the Albany Flight Kitchen was one of the adverse employment actions plaintiff was alleging. It did not instruct the jury that Dobbs in fact did refuse to transfer her or that Dobbs had an obligation to transfer her. Nor did the Court instruct the jury that if it found that Dobbs refused to transfer plaintiff, it could infer unlawful retaliation from such refusal. Dobbs was free to present, and did in fact present evidence that plaintiff requested no such transfer, and that such transfers had to be negotiated through plaintiff's union. Accordingly, the jury was free to accept or reject plaintiff's allegations that she in fact suffered such an adverse employment action.

The Court also instructed the jury that plaintiff was required to prove a causal connection between the protected activity engaged in and the adverse employment action. Nothing in the charge suggested that a finding that Dobbs refused to transfer plaintiff, in and of itself, was sufficient to show unlawful retaliation. The Court concludes the instructions, as a whole, did not mislead the jury. *See, e.g., Parke–Hayden, Inc. v. Loews Theatre Management Corp.,* 1993 WL 287815, at *2 (S.D.N.Y.) ("The court should grant judgment as a matter of law if the charge creates substantial and ineradicable doubt about whether the jury has been properly guided in its deliberations.") (citing *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 (5th Cir.1985)), *aff'd,* 22 F.3d 1091 (2d Cir.), *cert. denied,* 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 133 (1994). Judgment as a matter of law is thus not warranted in this respect.

### 4. The Punitive Damages Hearing

█ Finally, Dobbs argues that the Court erred in restricting the evidence at the puni-

---

**4.** This reasoning also applies to Dobbs' liability for punitive damages on the retaliation claim. *See, e.g., Deters v. Equifax Credit Information Services, Inc.,* 981 F.Supp. 1381, 1385 (D.Kan. 1997) (imputing liability for punitive damages to employer based on discriminatory actions of general manager with authority to hire and fire employees at local office).

tive damages hearing solely to the question of Dobbs' financial status. As plaintiff notes, Dobbs had every opportunity at the trial itself to present any and all evidence bearing on the question of the appropriateness of an award of punitive damages. The Court's bifurcated approach to the question of punitive damages was in accordance with *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 373 (2d Cir.1988), and judgment as a matter of law accordingly is denied in this respect.

For all the foregoing reasons, defendants' motion for judgment as a matter of law is denied in its entirety.

### B. Plaintiff's Motion for Attorneys' Fees and Costs

Plaintiff moves as a prevailing party for attorneys' fees and costs.

#### 1. Standard

 Title VII provides that

[i]n any action or proceeding under this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs ...

42 U.S.C. § 2000e–5(k). In order to determine a reasonable fee, the court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's attorneys by a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[5] The operative term is "reasonable."

#### 2. Hourly Rate

To determine hourly rate, the Supreme Court has adopted a marketplace model, *Blum,* 465 U.S. at 896, which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. Rensselaer,* 663 F.Supp. 743, 745 (N.D.N.Y.1987); *see Levy v. Scranton,* 1992 WL 265936 (N.D.N.Y.1992); *Auburn Enlarged City School District v.*

*Coastal Environmental Safety and Control, Inc.,* 1990 WL 19139 (N.D.N.Y.1990). The district court also considers other rates that have been awarded in similar cases in the same district. *Levy, supra,* at 3; *Miner v. City of Glens Falls,* 1992 WL 349668 (N.D.N.Y.1992), *aff'd,* 999 F.2d 655 (2d Cir. 1993); *Fiacco,* 663 F.Supp. at 745; *Auburn City School District,* 1990 WL 19139 at *2.

In *Haley v. Pataki,* 901 F.Supp. 85 (N.D.N.Y.1995), *aff'd,* 106 F.3d 478 (2d Cir. 1997), this Court applied the prevailing market rates found within the Northern District of New York in its calculation of an award of attorneys' fees as follows:

| Attorney | Type of Work | Hourly Rate |
| --- | --- | --- |
| Partner | Legal | $150 |
| Associate | Legal | $100 |

*Id.* at 89. Plaintiff's counsel request an hourly rate of $150.00. Defendants do not dispute this request. Accordingly, the Court will apply an hourly rate of $150 as to Hynes and Pelagalli.

#### 3. Reasonable Hours

 In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Plaintiff's counsel have submitted such records, and request compensation for a total of 546.98 hours. The Court does not find these hours unreasonable *per se.* Thus, we begin with a lodestar figure of $82,087.50.

#### 4. Adjustments to Lodestar

 Defendants first argue that plaintiff may not recover fees attributable to unsuccessful claims. The lodestar figure is accorded a strong presumption of reasonableness. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449, (1992); *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992), *cert. denied,* 506 U.S.

---

**5.** "The standards set forth in [*Hensley*] are generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley,* 461 U.S. at 433, n. 7, 103 S.Ct. 1933.

1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). "So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994) (quoting *Grant,* 973 F.2d at 101). Such fees may be awarded where "the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1183 (2d Cir.1996)(quoting *Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1259 (2d Cir.1987)). The determination whether to exclude such amounts, however, is within this Court's discretion. *Reed,* 95 F.3d at 1183; *Grant,* 973 F.2d at 101.

In the present case, plaintiff's successful retaliation claim and her unsuccessful harassment claims were "inextricably intertwined." *Dominic,* 822 F.2d at 1259. Her theory was that Dobbs retaliated against her for complaining of the very same sexual harassment that was the subject of her unsuccessful claims. Accordingly, plaintiff's lack of success on the harassment claims does not, in and of itself, merit a reduction of the lodestar. *See Reed,* 95 F.3d at 1183; *Iannone v. Frederic R. Harris, Inc.,* 1997 WL 12809, at *2 (S.D.N.Y.); *Shea v. Icelandair,* 1996 WL 656446, at *4 (S.D.N.Y.).

■ Nonetheless, even where successful and unsuccessful claims are related, "the court must determine whether the plaintiff's level of success warrants a reduction in the fee award." *Grant,* 973 F.2d at 101. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. Such is the case here. Though plaintiff prevailed on her retaliation claim, she was unsuccessful as to every other claim, largely due to her failure to prove damages. Because much of the hours requested were spent on these unsuccessful claims, the Court concludes that a twenty percent reduction in the lodestar figure is warranted. *See Dailey v. Societe*

*Generale,* 915 F.Supp. 1315, 1331 (S.D.N.Y. 1996) (reducing fee request by ten percent to account for limited overall success), *vacated in part on other grounds,* 108 F.3d 451 (2d Cir.1997). This reduces the lodestar to $65,670.00.

■ Defendants next argue that plaintiff should not be compensated for the services of two attorneys. Mr. Pelagalli did not begin representing plaintiff, along with Ms. Hynes, until late October of 1997. His representation was limited for the most part to the trial of this action.

■ "[P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983). The billing records submitted by plaintiff's counsel reveal no duplication of tasks or excessive billing that may have resulted from the use of two counsel, and defendants do not raise any specific objections to plaintiff's employment of two counsel. Accordingly, the Court will not reduce the lodestar on this basis.

For these reasons, plaintiff's motion for attorneys' fees is granted in the amount of $65,670.00.

### 5. Costs

Plaintiff also requests costs and expenses in the amount of $5,707.83. Defendant does not object to this request. Accordingly, the application for costs is granted in the amount of $5,707.83.

### III. Conclusion

For all of the foregoing reasons, defendants' motion for judgment as a matter of law is DENIED in its entirety. Plaintiff's motion for attorneys' fees and costs is GRANTED in the amount of $71,377.83.

IT IS SO ORDERED