Jeffrey ALNUTT, Plaintiff,

v.

William CLEARY, James Kenner, Keith White, Robert Gruver, Joseph Bates, Richard Kozlowski, Thomas Lamb, Carl Anderson, Mary Guenther, Defendants.

No. 90–CV–804L.

United States District Court,
W.D. New York.

Nov. 24, 1998.

Court appointed Margaret Somerset of Harris, Beach and Wilcox to represent the plaintiff pro bono. The case went to trial in July 1998, and plaintiff was the prevailing party. Plaintiff now moves for an award of attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

## FACTUAL BACKGROUND

In his amended complaint, which was filed November 12, 1993, by Ms. Somerset, plaintiff asserted claims against Sergeant Robert Gruver and corrections officers Carl Anderson, Joseph Bates, William Cleary, Mary Guenther, James Kenner, Richard Koslowski, Thomas Lamb, and Keith White. Specifically, plaintiff alleged four causes of action. First, plaintiff claimed that Gruver, Cleary, Kenner, and White verbally harassed and assaulted him and issued false disciplinary tickets against him in a concerted effort to deter him from performing his duties as IGRC representative. Second, plaintiff alleged that Gruver, Andersen, and Lamb failed to conduct plaintiff's urinalysis test in accordance with department directives and caused a false positive test result to be reported in retaliation for plaintiff's IGRC activities. Third, plaintiff claimed that Gruver, Anderson, Bates, Guenther, and Lamb transferred plaintiff to another facility, in violation of department directives, while plaintiff was an IGRC representative. Fourth, plaintiff alleged that Bates failed to afford him a fair disciplinary hearing on the drug charges and that Koslowski testified falsely at the hearing.

After extensive discovery, the parties cross-moved for summary judgment. In a decision filed January 8, 1996, familiarity with which is assumed, I denied plaintiff's cross-motion for partial summary judgment and denied, in part, and granted, in part, defendants' cross-motion for summary judgment. Specifically, I denied defendants' motion for summary judgment on plaintiff's first two causes of action, finding that plaintiff's numerous allegations, if true, could support a verdict that defendants retaliated against

Margaret E. Somerset, Harris, Beach & Wilcox, Rochester, NY, for Jeffery Alnutt, plaintiff.

Emil J. Bove, Office of New York State, Attorney General, Rochester, NY, Mary H. Doyle, New York State Attorney General's Office, Department of Law, Rochester, NY, for Cleary, C.O., D. Kennor, C.O., K. White, C.O., Gruver, Sgt., T. Lamb, G. Anderson, defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Jeffrey Alnutt, commenced this action pro se in 1990, pursuant to 42 U.S.C. § 1983, alleging that several corrections officers violated his civil rights after he was elected as an Inmate Grievance Resolution Committee ("IGRC") representative at Wende Correctional Facility. In 1993, the

him for performing his IGRC duties.[1] I granted summary judgment in favor of defendants on plaintiff's third cause of action on the ground that the directive limiting the transfer of IGRC representatives did not give rise to a liberty interest. I did note, however, that evidence of the improper transfer could be introduced at trial in support of plaintiff's retaliation claim. Finally, I granted summary judgment on plaintiff's fourth cause of action on the ground that plaintiff was afforded the requisite due process at his disciplinary hearing. As a result of my decision on the summary judgment motions, the complaint was dismissed as to defendants Bates, Guenther, and Koslowski.

The case then proceeded to trial against the remaining six defendants. On August 4, 1998, after five days of trial, the jury found, in answer to written interrogatories, that Sergeant Gruver had, in fact, retaliated against plaintiff for exercising his First Amendment rights and assessed compensatory damages against Gruver in the amount of $35,000. The jury also found that plaintiff was entitled to recover punitive damages from Gruver. The jury returned a verdict of no cause of action in favor of defendants Anderson, Cleary, Kenner, Lamb, and White. Prior to a hearing before the jury on the amount of punitive damages, the parties reached a settlement. Pursuant to that agreement, judgment was entered in favor of plaintiff and against Gruver in the amount of $35,000, and Gruver waived his right to appeal the jury's verdict. Plaintiff's claim for punitive damages was withdrawn and dis-

missed. It was understood that plaintiff would petition the Court for attorney's fees.

Plaintiff now moves for an award of attorney's fees and costs, pursuant to 42 U.S.C. § 1988, in the amount of $106,167.99. Plaintiff's counsel seeks $102,517 in fees and $3,650.99 in costs. The fee request of $102,517 is allocated between the following individuals: Margaret Somerset, Esq. (663.9 hours at $120–$180 per hour for a total of $100,957);[2] Daniel P. O'Brien, Esq. (5.7 hours at $90 per hour for a total of $513); Leslie Ortiz, summer associate (5 hours at $85 per hour for a total of $425); Ed Russell, summer associate (2.8 hours at $85 per hour for a total of $238); Joette McHugh, nurse legal consultant (4 hours at $75 per hour for a total of $300); Melinda Muldoon, paralegal (.6 hours at $55 per hour for a total of $33); Jane Prucha, library clerk (1.3 hours at $30 per hour for a total of $39); and Janet Jablonski, library clerk (.4 hours at $30 per hour for a total of $12).

The cost request of $3,650.99 is allocated among the following: computer research ($125.13); long-distance telephone calls ($421.86); photocopies ($2,254.90); special mailing expenses ($124.05); travel ($184.27); facsimile transmissions ($26.00); deposition transcripts ($446.78); and service of process ($68.00).

Defendant does not dispute that plaintiff is the prevailing party in this action and, therefore, is entitled to an award of reasonable attorney's fees and costs. Defendant contends that the request is not reasonable. Defendant contests the total hours worked,

---

1. To the extent that plaintiff claimed in his first cause of action that the harassment and false disciplinary tickets, in and of themselves, violated his constitutional rights, I held that those claims must fail. I determined, however, that plaintiff's essential claim was for retaliation, and that he could proceed on that claim.

2. Somerset seeks reimbursement at her historic billing rates—i.e., the rate that would have been charged in the year the services were provided. Although there is ample Second Circuit authority that her current rates, rather than her historic rates, should be applied in order to compensate her for the delay in payment, *Gierlinger v. Gleason*, 1998 WL 770698, at *25–26 (2d Cir. Nov.5, 1998); *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir.1998), Somerset, "[i]n an attempt to be as fair as possible," has not request-

ed such enhanced compensation. Affirmation of Margaret E. Somerset, filed October 7, 1998, at ¶ 20. Instead, she seeks reimbursement at the following historic rates, which equate to an average historic rate of approximately $152:

- 34.20 hours at a rate of $120 per hour for a total of $ 4,104.00;
- 246.30 hours at a rate of $135 per hour for a total of $33,250.50;
- 115.70 hours at a rate of $140 per hour for a total of $16,198.00;
- 9.70 hours at a rate of $150 per hour for a total of $ 1,455.00;
- 32.70 hours at a rate of $165 per hour for a total of $ 5,395.50; and
- 225.30 hours at a rate of $180 per hour for a total of $40,554.00.

the rates charged, and seeks a reduction based on the degree of success.

## DISCUSSION

### I. Attorney's Fees

#### A. The Lodestar Approach

Title 42 U.S.C. § 1988 provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." In this Circuit, "[t]he lodestar approach governs the initial estimate of reasonable fees." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992). Under this approach, "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Grant*, 973 F.2d at 99.

Plaintiff has the burden to establish the reasonableness of both the number of hours worked and the rate charged. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Cefali v. Buffalo Brass Co.*, 748 F.Supp. 1011, 1018 (W.D.N.Y.1990). The initial fee calculation should exclude hours that were not "reasonably expended" because they were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Further, a reasonable rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

#### 1. Number of Hours Worked

Plaintiff seeks compensation for the 663.9 hours Somerset spent on this case from 1993 through 1998. As an initial matter, I note that Somerset, in the exercise of sound billing judgment, has already reduced her fee request by a significant number of hours (totally nearly $6,000 in fees) for time that she felt was duplicative. Further, I have carefully reviewed Somerset's remaining bill-ing entries, and I do not find them to be excessive in light of the issues involved in this action. When she accepted the case, the file consisted of more than 4,000 pages of supporting documentation. She prepared an amended complaint, conducted extensive discovery (including fourteen depositions), prepared and responded to a comprehensive motion for summary judgment, engaged in extensive settlement negotiations, and ultimately tried the case. I find that her request to be compensated for 663.9 hours is reasonable, and, therefore, I will use that number in calculating the lodestar.

Plaintiff also seeks compensation for the hours worked by the following individuals: O'Brien (5.7); Ortiz (5); Russell (2.8); McHugh (4); Muldoon (.6); Prucha (1.3); and Jablonski (.4). It is clear that Somerset efficiently enlisted the assistance of other attorneys and paraprofessionals in her firm, with substantially lower billing rates, to perform discrete tasks for her. In doing so, Somerset was able to reduce the overall billing for those tasks. This is to be commended. Further, I have carefully reviewed the billing entries, and I find that the number of hours worked is entirely reasonable in relation to the tasks performed. Therefore, the hours submitted by these individuals will be used in calculating the lodestar.

#### 2. Hourly Rates

In calculating the lodestar, plaintiff aks that the following hourly rates apply: Somerset ($120–$180); O'Brien ($90); Ortiz ($85); Russell ($85); McHugh ($75); Muldoon ($55); Prucha ($30); and Jablonski ($30). Defendant objects to these rates as higher than those prevailing in the community.[3]

##### a. Somerset

I begin my analysis with Somerset's request for historic rates of $120–$180 for work performed from 1993 through 1998. Somerset graduated from law school in 1989 and was admitted to practice in 1990. At the time she was assigned this case, Somerset

---

3. At the outset, I note that both parties maintained that the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), which substantially limits the recovery of attorney's fees in inmate actions, did not apply to this case because the case was filed and plaintiff's attorney began her representation before the PLRA's enactment. For the purposes of the instant fee application, therefore, I have assumed that the PLRA does not apply.

had more than three years' experience handling complex litigation matters. At the time she tried this case, Somerset had nearly eight years' experience handling such matters.

In support of her fee request, Somerset submitted the affirmations of three prominent attorneys here in Rochester, who all attest that the rates she requested are commensurate with the rates charged by other attorneys in the region with similar levels of education, experience, and reputation. Specifically, Thomas G. Smith, Esq., a trial partner at Harter, Secrest and Emery, LLP, states that his firm billed the services of middle and senior level associates at a rate of $110 to $180 per hour for work performed from 1993 through 1998. Similarly, David M. Schraver, Esq., a partner at Nixon, Hargrave, Devans and Doyle, LLP and chair of their litigation practice group, declares that his firm's standard rates for the services of middle and senior level associates were $130 to $205 per hour for work performed during the same time period. Finally, H. Todd Bullard, Esq. affirms that as a private practitioner, he charged rates of $110 to $160 per hour for work performed from 1992 through 1998.

Courts within the Western District of New York have found rates similar to those requested by Somerset to be commensurate with those prevailing in the community. For example, in *Greenway v. Buffalo Hilton Hotel,* 951 F.Supp. 1039 (W.D.N.Y.1997), *aff'd,* 143 F.3d 47 (2d Cir.1998), Magistrate Judge Leslie Foschio found that a senior level associate with between five and six years of experience should be billed at $125 per hour for work performed from 1994 through 1996. Similarly, in *Myree v. Local 41, International Brotherhood Electrical Workers,* 847 F.Supp. 1059 (W.D.N.Y.), *aff'd,* 29 F.3d 620 (2d Cir.1994), Judge William S. Skretny found that an attorney with nine years of litigation experience was entitled to an hourly rate of $150 for work performed from 1989 through 1993. Given the fact that these cases involved work performed a number of years ago, the prevailing rates would be even higher today.

■ I do find, however, that the rate for travel time is excessive. Somerset seeks compensation at her full billing rate for 18 hours of travel time (15 hours at a rate of $120 per hour and 3 hours at a rate of $180 per hour) for a total of $2,340. Courts in this Circuit customarily reimburse attorneys for their travel time at 50% of their normal hourly billing rates. *Mr. X v. New York State Educ. Dep't,* 1998 WL 601102, at *2 (S.D.N.Y. Sept.4, 1998); *Clark v. Phillips,* 965 F.Supp. 331, 336 (N.D.N.Y.1997); *Berry v. New York State Dep't of Correctional Servs.,* 947 F.Supp. 647, 651–52 (W.D.N.Y. 1996); *Luciano v. Olsten Corp.,* 925 F.Supp. 956, 965 (E.D.N.Y.1996), *aff'd,* 109 F.3d 111 (2d Cir.1997). Therefore, I will compensate plaintiff for her travel time at 50% of her hourly billing rate for a total of $1,170.

In addition, as noted, Somerset has acted reasonably in seeking payment based on historical rates rather than at contemporary rates. Such a request inures to the benefit of defendant since payment at contemporary rates would certainly result in a higher fee request. Therefore, based on the foregoing, I find that the historic rates requested by Somerset are reasonable for the years in question and, therefore, will be used in calculating the lodestar.

■ In seeking reduction of the fee request, defendant relies in part on a retainer agreement between plaintiff and Somerset for the period from August 26, 1997 through the completion of this case. This retainer agreement was negotiated after plaintiff was released from custody and, in part, at the specific behest of this Court. Essentially, I thought that plaintiff should bear some responsibility for the prosecution of this action now that he was no longer incarcerated and was gainfully employed. Among other things, the retainer agreement provided that Alnutt would pay Somerset one-half of her standard hourly billing rate. The agreement also acknowledged, however, that plaintiff would not be responsible for the payment of such fees if they were recovered from the defendants, pursuant to 42 U.S.C. § 1988. According to Somerset, the rate charged in the retainer agreement was not intended to represent the prevailing market rate.

I have carefully considered the retainer agreement in determining the reasonable hourly rates for Somerset's services. However, given the unique circumstances under which it was entered into, I find that agreement is not controlling on the instant fee application. Instead, I will apply the historic rates requested by Somerset in calculating the lodestar.

### b. O'Brien, Ortiz, and Russell

█ Plaintiff also seeks hourly rates of $85 for two summer associates for work performed in 1998 and $90 for a junior associate for work performed in 1994. In support of these rates, plaintiff again points to the affirmations of Smith and Schraver. Smith states that from 1993 through 1998, his firm charged $50 to $65 per hour for the work of summer associates and $80 to $110 per hour for the work of junior associates. Schraver declares that during the same period, his firm charged $105 to $125 per hour for the work of summer associates and $105 to $135 per hour for the work of junior associates.

In *Berry v. New York State Dep't of Correctional Servs.*, 947 F.Supp. 647 (W.D.N.Y. 1996), I found that a relatively inexperienced litigator should be compensated at an average historic rate of $100 per hour for work performed from 1989 through 1996. I find, therefore, that the rates requested by plaintiff for O'Brien ($90), Ortiz ($85), and Russell ($85) are appropriate and will be used in calculating the lodestar.

### c. McHugh, Muldoon, Prucha, and Jablonski

█ Finally, plaintiff seeks hourly rates of $75 for a nurse, $55 for a paralegal, and $30 for two librarians. In support of these rates, I look again to the affirmations of Smith and Schraver. Smith states that from 1993 through 1998, his firm charged $50 to $85 per hour for the work of paralegals and staff nurses and $25 per hour for the work of library assistants. Schraver declares that during the same period, his firm charged $71 to $110 per hour for the work of paralegals, library assistants, and nurse consultants.

In this district, courts have found rates similar to those requested by plaintiff for the paraprofessionals involved in this case to be reasonable. For example, in *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039 (W.D.N.Y.1997), *aff'd*, 143 F.3d 47 (2d Cir. 1998), Magistrate Judge Foschio held that legal assistants should be billed at $55 per hour for work performed from 1994 through 1996. Similarly, in *Berry v. New York State Dep't of Correctional Servs.*, 947 F.Supp. 647 (W.D.N.Y.1996), I held that an average historic rate of $50 per hour for a paralegal for the years 1989 through 1996 was reasonable, given the prevailing market rates for paralegals in this community.

Based on the foregoing, I find that the rates requested for McHugh ($75), Muldoon ($55), Jablonski ($30), and Prucha ($30) are reasonable and, therefore, will be used in calculating the lodestar.

### 3. Calculation of the Lodestar Figure

Based on the foregoing analysis, I calculate the lodestar figure to be $101,347:

| NAME | RATE | HOURS | TOTAL |
|---|---|---|---|
| Somerset | $120–$180 | 663.9 | $ 99,787 [4] |
| O'Brien | $90 | 5.7 | $ 513 |
| Ortiz | $85 | 5.0 | $ 425 |
| Russell | $85 | 2.8 | $ 238 |
| McHugh | $75 | 4.0 | $ 300 |
| Muldoon | $55 | 0.6 | $ 33 |
| Prucha | $30 | 1.3 | $ 39 |
| Jablonski | $30 | 0.4 | $ 12 |
| | | | $101,347 |

### B. Adjustment to the Lodestar Figure

█ My inquiry does not end with the determination of the lodestar figure. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Although there is a strong presumption that the lodestar figure represents the reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), other considerations may lead to an upward or downward adjustment of the lodestar. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The most critical factor to consider is the degree of success obtained by the plaintiff. *Id.* at 436, 103 S.Ct. 1933.

█ In determining whether a plaintiff's partial success requires a reduction in the lodestar, the district court must first

---

**4.** This figure was arrived at by reducing Somerset's total fees of $100,957 by $1,170 to account for the 50% reduction in her billings for travel time.

examine "whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded." *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992). If so, "[t]he hours spent on such unsuccessful claims should be excluded from the calculation." *Id.* Next, the district court must determine, "whether there are any unsuccessful claims interrelated with the successful claims." *Id.* "If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award." *Id.* Where a plaintiff has obtained excellent results, however, his attorney should be fully compensated. *Id.*

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933; *see also United States Football League v. National Football League*, 887 F.2d 408, 413–14 (2d Cir.1989) (affirming district court's percentage reduction of attorney's fee award to account for plaintiff's lack of success); *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," percentage cuts are "a practical means of trimming fat from a fee application"); *Scanlon v. Kessler*, 1998 WL 726047, at *4 (S.D.N.Y. Oct.14, 1998) (reducing plaintiff's lodestar figure by a percentage to account for plaintiff's limited success).

■ As previously discussed, plaintiff asserted four causes of action in this matter. The first three causes of action were interrelated in that they alleged various actions taken by the defendants against plaintiff in retaliation for his activities as an IGRC representative. Plaintiff's fourth cause of action against Bates and Koslowski, however, was unrelated in that it involved simply the manner in which plaintiff's disciplinary hearing was conducted and did not raise any allegations of retaliatory treatment. I granted summary judgment on that cause of action, finding that plaintiff was, in fact, afforded a proper disciplinary hearing.

I must treat the unrelated claim as if it had been raised in a separate lawsuit, and, therefore, "no fee may be awarded for services on [this] unsuccessful claim." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. I am unable to ascertain from the billing entries submitted, however, the exact amount of time spent on the cause of action against Bates and Koslowski. Therefore, I will simply reduce the lodestar by a percentage to account for plaintiff's limited success. In determining the appropriate percentage, I have considered that this claim remained in the case only until the summary judgment phase and that it certainly was not the primary legal theory advanced by the plaintiff in this lawsuit. Accordingly, I find that a reduction of the lodestar figure by 10% to $91,212.30 is appropriate to account for plaintiff's lack of success on this unrelated claim.

■ With respect to plaintiff's three remaining causes of action, plaintiff essentially went to trial against Gruver, Anderson, Cleary, Kenner, Lamb, and White on the interrelated factual allegations set forth therein.[5] The claims against these defendants involved a common core of facts arising from events at Wende Correctional Facility and involved the common legal theory that defendants had retaliated against plaintiff for exercising his First Amendment rights as IGRC representative. Plaintiff was successful in obtaining a verdict against Gruver for $35,000 in compensatory damages and a finding that Gruver was liable for punitive damages. This by itself is a significant verdict in favor of plaintiff. Jury verdicts in *any* amount in favor of an inmate, a convicted felon, against a sergeant with the Department of Correctional Services is rare. This is especially so in this case where plaintiff

---

5. Although I granted summary judgment on plaintiff's third cause of action because the directive limiting the transfer of IGRC representatives did not give rise to a liberty interest, I did allow evidence of the improper transfer to be introduced at trial in support of plaintiff's retaliation claim.

was not claiming any physical injuries because of assaultive conduct by defendants. Gruver was the only supervisory official involved in this action. In fact, he was the sergeant assigned to oversee the IGRC. Based upon the testimony at trial, the jury may well have believed that Gruver was in charge of the retaliatory campaign against plaintiff.

It is true that plaintiff did not receive a verdict against the other defendants. That fact, however, does not warrant any reduction in the fee request. I base this on several factors. As mentioned, the substantial verdict against Gruver is a highly successful conclusion to the litigation. Additionally, it is evident that the claims against Gruver and the others were interrelated. Discovery and the presentation of evidence at trial would not have changed appreciably even if plaintiff had proceeded solely against Gruver. The evidence regarding the other defendants was necessarily related to plaintiff's successful claims. Furthermore, based on the damages claimed by plaintiff at trial, it is difficult to imagine how his ultimate compensatory damages award would have increased had he prevailed against the other defendants.

In a case remarkably similar to the instant case, *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir.1994), the Second Circuit found that plaintiff's partial success at trial did not require a reduction in the lodestar. In *Lunday*, plaintiff sued the City of Albany and four of its police officers for civil rights violations. The jury returned a verdict against only one of the defendants and awarded plaintiff $20,000 in compensatory damages and $15,000 in punitive damages. The magistrate judge granted attorney's fees and costs in the amount of $118,912.08, finding that no reduction was warranted for plaintiff's limited success at trial. According to the Circuit, "[w]hile it is true that Lunday did not prevail on all of his claims against all the defendants, Lunday was awarded $35,000 in compensatory and punitive damages against defendant Sutton. The City concedes that all of Lunday's claims arose from

a common core of facts. Therefore, the Court was not required to adjust the lodestar to reflect the failure to succeed across the board." *Id.* at 135. The Circuit concluded that the "magistrate judge found that Lunday's recovery was a 'substantial success' in a suit of this type, and we cannot say that this finding was an abuse of discretion." *Id.*

For all these reasons, I find that the lodestar amount need not be reduced despite plaintiff's failure on the claims against the other defendants.[6] There can be little doubt that plaintiff's claims involved "a common core of facts" and were based on "related legal theories" and that much of counsel's time "was devoted generally to the litigation as a whole." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. I have carefully considered the relationship between the amount of the fees awarded and the results obtained, as well as counsel's excellent performance in this matter, and I find that no further reduction is warranted.

## II. Costs

In addition to his attorney's fees, plaintiff seeks costs and disbursements of $3,650.99. Plaintiff's counsel has submitted explanations for the following list of expenses: computer research ($125.13); long-distance telephone calls ($421.86); photocopies ($2,254.90); special mailing expenses ($124.05); travel ($184.27); facsimile transmissions ($26.00); deposition transcripts ($446.78); and service of process ($68.00). Defendant objects to these expenses on the grounds that they are excessive and that he should not be required to pay the ordinary costs of running plaintiff's attorney's office.

I find that the vast majority of these expenses are not only reasonable, but are ordinarily compensable on an attorney's fees application. *Bhatia v. Air India*, 1992 WL 232146 (S.D.N.Y. Sept.2, 1992) (awarding plaintiff costs and disbursements for long-distance telephone calls, facsimiles, photocopying, postage, express mail, service of

---

**6.** I also find that no further reduction is warranted by the fact that the complaint was dismissed as to defendant Guenther on summary judgment. Guenther was simply the Acting Deputy Superintendent of Security at Wende who authorized plaintiff's transfer out of the facility—a transfer plaintiff alleged was actually orchestrated by Gruver, Lamb, and Anderson.

process, messenger service, transportation, and deposition transcripts). The Second Circuit, however, has disallowed reimbursement for computer research on the grounds that it "is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996); *see also LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). Therefore, I will not allow plaintiff's attorney to be reimbursed $125.13 for her computer research time.

Accordingly, plaintiff's attorney is entitled to an award of costs in this case in the amount of $3,525.86.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney's fees and costs, pursuant to 42 U.S.C. § 1988, is granted in part, and plaintiff's attorney, Margaret Somerset, is awarded $94,738.16. That sum shall be paid within forty-five (45) days of the entry of this order.

IT IS SO ORDERED.